HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NISQUALLY INDIAN TRIBE,

Plaintiff,

v.

CHRISTINE GREGOIRE, Governor of the State of Washington;

ANDREW WHITENER, Director of Skookum Creek Tobacco Co.;

DAVID LOPEMAN, Direct of Skookum Creek Tobacco Co.;

BRYAN JOHNSON, General Manager of Skookum Creek Tobacco Co.,

Defendants.

Case No. 08-5069RBL

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiff Nisqually Indian Tribe's ["Nisqually"] Motion for Preliminary Injunction [Dkt. #2]. Nisqually seeks a preliminary injunction to enjoin the taxation of sales of cigarettes at the Frank's Landing smoke shop, which is operated by the Skookum Creek Tobacco Company, an enterprise owned by the Squaxin Island Indian Tribe ["Squaxin"]. Nisqually claims that the cigarettes are improperly taxed and that sales are being made pursuant to an invalid Addendum to a cigarette tax compact between the State of Washington and Squaxin in violation of federal and state law.

Nisqually also claims that the Addendum conflicts with an existing cigarette tax compact between the State and Nisqually.

Defendants in this matter include Washington State's governor, Christine Gregoire, the official who negotiated and entered into the cigarette tax compact and Addendum with the Squaxin; and the directors and general manager of Skookum Tobacco: Andrew Whitener, Bryan Johnson and David Lopeman. Defendant Governor Gregoire has moved to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(7) on the basis that the Court lacks subject matter jurisdiction and that Squaxin is an indispensable party to the suit under Fed. R. Civ. P. 19 [Dkt. # 31]. Defendants Whitener, Lopeman and Johnson join in the Governor's motion to dismiss for failure to join Squaxin and the Frank's Landing Indian Community ["the Community"], both indispensable parties [Dkt. # 20]. These defendants also request that the Court dismiss the action against them because they play no role in the collection or disbursement of tax revenues by Squaxin. They therefore could not comply with the injunctive relief Nisqually seeks, even if ordered by the Court.

The Court has allowed Squaxin and the Community to intervene for the limited purposes of objecting to the Plaintiff's Motion for Preliminary Injunction and moving for dismissal. Both Squaxin and the Community move for dismissal pursuant to Fed. R. Civ. P. 12(b)(7), on the basis that each is an indispensable party to the litigation under Fed. R. Civ. P. 19 [Dkt. # 36 & # 57].

The Court must determine its jurisdiction before considering the merits, *Wilbur v. Locke*, 423 F.3d 1101, 1105-06 (9th Cir. 2005). It therefore has considered the motions to dismiss for lack of subject matter jurisdiction and for failure to join an indispensable party in advance of Nisqually's motion for preliminary injunction.

The Court has reviewed materials submitted by the parties and participated in extensive oral argument with counsel and for the following reasons, **DENIES** the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to join Squaxin and the Community pursuant to Fed. R. Civ. P. 19; **DENIES** the Nisqually's motion for preliminary injunction [Dkt. # 2]; **GRANTS** Defendants Whitener, Johnson and Lopeman's motion to dismiss the suit as against them [Dkt. # 20]; and **GRANTS** Nisqually's motion to amend complaint [Dkt. # 46].

**I. BRIEF HISTORY OF FRANK'S LANDING**

Frank's Landing consists of three parcels of land that are held in trust by the United States for the benefit of individual Indians, otherwise known as allotments. The government gave these allotments to individual Indians in 1918 when part of the land constituting the Nisqually Reservation was taken to create the Fort Lewis Military Reservation. The smoke shop that is at issue in this litigation is located on one of these allotments and the beneficiary of this allotment is Theresa Bridges, a Squaxin tribal member.

In 1987, Congress enacted Pub. L. No. 100-153, § 10 (Nov. 5, 1987), to recognize that the members of the Frank's Landing Indian Community are eligible for certain programs and services provided to Indians by the United States government and that the Community is "recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act[.]" The legislative history, Senate Report No. 100-186, S. Rep. 100-186 (Sep. 29, 1987), indicates that Congress did not intend to establish the Community as a "federally-recognized tribe," nor did it intend to establish Frank's Landing as an Indian reservation.

Congress amended this law in 1994 to explicitly declare that the Community is a "self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe." *See* Pub. L. No. 103-435, § 8 (Nov. 2, 1994). Congress also expressly reiterated that the law does not "constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized tribe." *Id.*

The Frank's Landing allotments are outside the boundaries of the Nisqually Reservation, and the legal status and jurisdiction of this trust land has been the subject of a longstanding dispute between Nisqually and the Frank's Landing Indian Community.

**II. MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**a. The Court has Federal Question Subject Matter Jurisdiction**

Defendants move to dismiss this matter under Fed. R. Civ. P. 12(b)(1) on the basis that federal question subject matter does not exist. The federal courts have jurisdiction over any civil action arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, and any action brought by an Indian tribe arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1362. In order for a suit to arise under federal law, "a plaintiff's well-pleaded complaint must established either (1)

that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004), *cert. denied*, 543 U.S. 1054 (2005). The mere fact that a defendant is a tribe is not enough to create federal question jurisdiction. *Id.*

Although Nisqually has not adequately set forth federal law that creates a cause of action[1], federal question jurisdiction exists because Nisqually's right to relief depends on the resolution of a substantial question of federal law. Nisqually's requested relief depends on whether Squaxin can exercise its power , as a sovereign, federally-recognized tribe, to tax economic activity occurring on land held in trust by the United States for a member of the Squaxin Tribe–land that is within the territory of a self-governing dependent Indian community.

The question of a tribe's power to tax is a question of federal law because its power to tax derives from its inherent sovereign authority, and "[o]nly the Federal Government may limit a tribe's exercise of its sovereign authority." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 147 (1982). Because Nisqually's request for relief turns on this question of whether Squaxin can impose its tribal cigarette tax on sales made on land held in trust for Squaxin tribal member, Theresa Bridges, the Court has federal question jurisdiction over this matter.

**b. The Court has Supplemental Jurisdiction**

Nisqually also asserts two state law claims: the Addendum and the continued sale of cigarettes at the Frank's Landing smoke shop violate state law and are a breach of the existing cigarette compact between Nisqually and the State. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

[1] Nisqually alleges that the defendants' actions violate federal law including, but not limited to, the Constitution of the United States, and Pub. L. No. 103-435, 108 Stat. 4569 (Nov. 2, 1994). Nisqually has not alleged what portion of the Constitution has been violated, and Pub. L. No. 103-435 does not create a private cause of action. Instead, Pub. L. No. 103-435 only amends a previous law that formally recognizes the Frank's Landing Indian Community and its eligibility for certain federal programs and services; and adds that the Community is "not subject to the jurisdiction of any federally recognized tribe."

Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added).

28 U.S.C. § 1367(a) requires the Court to exercise supplemental jurisdiction over all claims that are related to the claims under which original jurisdiction arises, as long as these claims form part of the same "case or controversy." Claims are part of the same case or controversy if the state and federal claims derive from a "common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Nisqually claims that the Addendum to the Squaxin compact and the continued sale of Squaxin tribal taxed cigarettes at the Frank's Landing smoke shop are violations of federal and state law and that the Governor breached the existing cigarette compact with Nisqually when she entered into the Addendum. *See Complaint* [Dkt. # 1], ¶ 30, ¶ 33, ¶ 36. All of Nisqually's claims involve the negotiation and enactment of the Addendum by the Squaxin and the Governor, as well as the sale of Squaxin tribal taxed cigarettes at the tribe's Frank's Landing smoke shop. Thus, both the federal and state law claims derive from a common nucleus of operative fact and arise from the "same case or controversy" for supplemental jurisdiction purposes.

## II. MOTIONS TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES

Defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(7) on the basis that Squaxin and the Community are indispensable parties under Fed. R. Civ. P. 19. The Court finds that Squaxin is a necessary and indispensable party to the suit but that Nisqually may name Jim Peters, chairman of Squaxin, pursuant to *Ex Parte Young* to cure the indispensability defect. Furthermore, the Court finds that the Community is a necessary party to the suit and joinder is feasible; thus, the Community must be joined pursuant to Fed. R. Civ. P. 19(a).

### a. Fed. R. Civ. P. 19 Analysis

In a Rule 19 mandatory joinder analysis, the Court must first ask whether an absent party is necessary to the suit, and, if so, whether joinder is feasible. Fed. R. Civ. P. 19(a). If the absent party is a necessary party that cannot feasibly be joined, then the Court must determine whether the party is an indispensable party: whether the action "in equity and good conscience" should proceed in the absence of the party or must it be dismissed. Fed. R. Civ. P. 19(b).

An absent party is necessary if one of two grounds is met:

> (1) in that person's absence complete relief cannot be accorded among those already parties; or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1). A party need only satisfy one of these alternative tests to be a necessary party. *See, e.g., Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).

**b. Squaxin is an Indispensable Party**

Applying the factors set forth in Rule 19(a), the Court finds that Squaxin is a necessary party to this lawsuit. Joinder of the Squaxin is required because the tribe is a party to the cigarette compact Addendum that Nisqually seeks to invalidate, and, thus, has a legally protectable interest in the suit. *See Wilbur v. Locke*, 423 F.2d 1101, 1115 (9th Cir. 2005) ("All parties to a contract are necessary in litigation seeking to 'decimate' that contract."). Granting relief in the Squaxin's absence would impair the tribe's ability to defend its contractual rights and would also subject defendant Governor Gregoire to risk of multiple and inconsistent obligations. If relief was granted, Governor Gregoire would be in the intenable position of choosing whether to (a) violate the terms of the Squaxin's cigarette compact or (b) ignore the Court's injunction and declaration that the Addendum to the compact is void.

Moreover, Nisqually cannot obtain complete relief if Squaxin is not a party to this suit. Under the cigarette compact and Addendum to the compact, Squaxin is charged with enforcement of the terms of the compact, and the tribe has not delegated its taxing authority to any agency or official of the tribe. *See Declaration of Andrew Whitener* [Dkt. # 22], ¶ 8. As a non-party to the suit, the Squaxin would not be bound by a judgment in favor of Nisqually, including an injunction, and could continue to permit sales of tribal taxed cigarettes at its smoke shop.

The Squaxin tribe is a necessary party to this suit. The Court also finds that the tribe cannot be feasibly joined. As a federally-recognized tribe, Squaxin is protected from suit by sovereign immunity. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978); *Three Affiliated Tribes v.*

*Wold Eng'g*, 476 U.S. 877, 890 (1986) ("The common law sovereign immunity possessed by [a tribe] is a necessary corollary to Indian sovereignty and self-governance.")

The Court must also determine whether the action can proceed "in equity and good conscience" in the absence of Squaxin: whether Squaxin is an indispensable party. The Court considers the following factors when determining whether a suit should proceed in the absence of a necessary party that cannot feasibly be joined:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

As a party to the cigarette compact Addendum that Nisqually seeks to void, Squaxin's contractual rights are threatened in this litigation, and no measure can be taken to lessen or eliminate the consequences if the requested relief was granted. An injunction cannot be tailored in a way to eliminate or lessen the impact on the Squaxin's sovereignty and its legally protected interests in the Addendum. *See Wilbur*, 423 F.2d at 1114. The injunction, if granted, would require sales at the Frank's Landing smoke shop to cease, leaving Squaxin unable to fulfill its lease with the beneficiary of the land where the smoke shop is located and forcing it to default on its contract with the Community.

The existing parties to the suit – the Governor and the Skookum officials – cannot adequately represent the interests of the Squaxin. Skookum and its officials are not a party to the Addendum, and, thus, have no legally protected interest in its validity. Likewise, although Governor Gregoire's interests are aligned with Squaxin's interests, the Governor does not have an interest in the Squaxin's power to tax and raise tribal revenue and cannot adequately defend the benefits Squaxin receives from its agreement with the State. *See American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 n. 5 (9th Cir. 2002).

Additionally, if dismissed, Nisqually may pursue its breach of contract claim against the Governor, as agreed upon in the terms of the Nisqually cigarette compact, in an alternative forum:

binding arbitration. Even assuming that Nisqually has no other forum to pursue its requested relief, the Ninth Circuit has "regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *American Greyhound Racing, Inc.*, 305 F.3d at 1025 (citing *Dawavendewa*, 276 F.3d at 1162). After balancing the factors set forth in Rule 19(b), the Court concludes that Squaxin is an indispensable party.

**c. Chairman Peters May be Joined to Cure the Indispensable Party Defect**

Although Squaxin is an indispensable party, Nisqually may name as a defendant an official of the tribe pursuant to *Ex Parte Young*, 209 U.S. 123, 157 (1908). To cure the indispensability of the Squaxin, Nisqually moves to amend its complaint to name Jim Peters, chairman of the Squaxin tribe, as a defendant. Nisqually argues that because it is seeking only declaratory and injunctive relief, Chairman Peters is not immune from suit and may be joined as a defendant in his official capacity pursuant to the doctrine of *Ex Parte Young*. Because Nisqually has alleged in its proposed amended complaint [Dkt. # 46] that Chairman Peters's actions are a continuing violation of federal law, the Court agrees that *Ex Parte Young* can be invoked, and tribal sovereign immunity does not shield Chairman Peters from suit.

Under the *Ex Parte Young* doctrine, immunity does not extend to an official whose actions are unconstitutional or violate federal law. *See Ex Parte Young*, 209 U.S. at 155-156 (holding that Eleventh Amendment immunity did not bar suit against the state's Attorney General to enjoin him from enforcing an allegedly unconstitutional statute). This doctrine has been extended to suits seeking prospective relief against tribal officials allegedly acting in violation of federal law. *See Burlington Northern R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944 (9th Cir. 2000).

In order to determine whether a tribal official may be joined pursuant to the *Ex Parte Young* doctrine, the Court need only conduct a "straightforward inquiry" into whether Nisqually "has alleged an ongoing violation of federal law and seeks prospective relief." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002)). The tribe has met this requirement.

Nisqually seeks declarative and injunctive relief and alleges in its proposed amended complaint [Dkt. # ] that Chairman Peters actions in entering into and implementing the Addendum to the Squaxin cigarette compact, and in making or permitting sales of improperly taxed cigarettes at the Frank's Landing smoke shop are ongoing violations of federal law. These allegations satisfy the requirements set forth in *Ex Parte Young* and *Burlington Northern v. Vaughn*, and Chairman Peters is not protected by tribal immunity.

Furthermore, a suit against Chairman Peters will not operate against the Squaxin as a tribe. If the injunctive relief is granted, Squaxin's sovereign authority to tax and to contract will be impaired but not completely divested; the tribe could still exercise its taxing authority on economic activity occurring on its reservation land and other tribal allotments, and its original cigarette compact with Washington State would still be valid.

This case is unlike *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997), where the Supreme Court did not allow suit against state officials of Idaho because the suit was essentially a quiet-title action, and the relief, if granted, would divest Idaho of all of its regulatory authority over the submerged lands of Lake Coeur d'Alene.

Judgment rendered in this suit would not be such a divestiture of Squaxin's sovereign authority to tax or to contract as to render the suit as one against the tribe itself. *See Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001). Instead, a judgment in favor of Nisqually would operate against Chairman Peters as the official who negotiated and implemented the Addendum to the Squaxin's cigarette compact.[2]

**d. Nisqually's Suit Against Defendants Whitener, Johnson and Lopeman is Dismissed**

Defendants Whitener, Johnson and Lopeman argue that the Nisqually's suit as against them should be dismissed because as Skookum officials, they have no authority to collect or disburse the

[2] If it is revealed during the discovery process that a Squaxin official other than Chairman Peters is responsible for the enforcement and/or collection of the Squaxin cigarette sales tax at the Frank's Landing smoke shop, the Court will permit Nisqually to amend its complaint to add as a party this official pursuant to *Ex Parte Young*. As of now, the Court does not have sufficient information to name the Squaxin official that has authority to enforce and/or collect the tribal cigarette tax, and, as such, Nisqually shall be given leave to again amend its complaint if such an official is discovered in the future.

tribal taxes imposed on sales of cigarettes at the Frank's Landing smoke shop, and, thus, could not comply with an injunction if ordered by the Court. Per the *Declaration of Andrew Whitener* [Dkt. # 22], Defendants Whitener, Johnson and Lopeman, as officials of Skookum Tobacco Company, do not have authority over the collection of Squaxin cigarette sales taxes or control over sales made at the Frank's Landing smoke shop; and they are not parties to the Addendum to the Squaxin cigarette compact. Because Skookum is wholly owned by Squaxin, the suit is properly against the Squaxin official who is responsible for the implementation of the Addendum and the enforcement and/or collection of Squaxin cigarette sales tax on sales made at the Frank's Landing smoke shop. Nisqually does not dispute that these defendants do not have the requisite authority needed to comply with an injunction ordered by the Court. As such, the action against Defendants Whitener, Johnson and Lopeman is dismissed.

**e. Frank's Landing Indian Community is a Necessary Party**

The Court also finds that the Community is a necessary party to the suit. The Community claims a legally-protected interest relating to the subject matter of this suit,[3] and the Community's ability to protect this interest would be impaired or impeded if the suit were disposed of in its absence. Per the agreement with Squaxin, the Community claims an interest in part of the tax revenue from the sales of cigarettes at the Frank's Landing smoke shop. *See Declaration of Jim Peters* [Dkt. # 23].

In *Dawavendewa*, a suit challenging the defendant's policy that gave hiring preference to Navajo Nation tribal members, the Ninth Circuit held that the Navajo Nation was a necessary party to the suit because it "claim[ed] a cognizable economic interest in the subject of th[e] litigation which may be grievously impaired by a decision rendered in its absence." *Dawavendewa*, 276 F.3d at 1157. The Court reasoned that the litigation threatened the Navajo's lease with the defendants because the lease required the defendant to implement a hiring preference policy, and this term was the sole reason that Navajo had agreed to lease the reservation land. As such, the Navajo's

[3] Rule 19(a) only requires that the party "claim" a legally-protected interest in the suit. *See Shermoen v. United States*, 982 F.3d 1312, 1317 (9th Cir. 1992) ("Just adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party.").

contractual and economic interests in the lease with the defendant could have been seriously impaired if the preference policy was abrogated by court action. Therefore, the tribe was a necessary party to the suit.

Similarly, the Community has contractual and economic interests that would be "grievously impaired" if judgment was rendered in favor of Nisqually. Even though the agreement between Squaxin and the Community is not directly at issue in this matter, this contract would be affected by a grant of judgment in favor of Nisqually. If the requested relief was granted, the Squaxin would be forced to cease the collection of tribal tax on cigarette sales at Frank's Landing and could no longer comply with its agreement with the Community; the Community's contractual rights would be seriously impaired. Furthermore, the Community's economic interest in the tax revenue it receives from its contract with Squaxin would be grievously impaired and, as a result, its ability to sustain essential governmental services that are funded by this tax revenue would be significantly hindered.

The Community argues that it cannot be joined as a party to this suit because as a self-governing Indian community, it enjoys sovereign immunity. However, tribal sovereign immunity is dependent on "tribal status." *See Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1387 (9th Cir. 1988) ("[T]he sovereign power of an Indian community depends on its tribal status."). Recognition of a tribe is "to be determined by Congress, and not by the courts." *Price v. State of Hawaii*, 764 F.2d 623 (9th Cir. 1985) (quoting *United States v. Sandoval*, 231 U.S. 28, 46 (1913)); *see also Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 891 (1986) (Indian tribal sovereignty is "subject to plenary federal control and definition.").

Congress officially recognized Frank's Landing Indian Community in 1987 as a "self governing dependent Indian community." Pub. L. No. 100-153, § 10 (Nov. 5, 1987). The legislative history indicates that Congress did not intend with this law to "create or to establish Frank's Landing as a Federally-recognized Indian Tribe." Senate Report, S. Rep. 100-186 (1987).

Congress amended this law in 1994 to clarify that the United States does not recognize the Frank's Landing Indian Community as an Indian tribe. *See* Pub. L. No. 103-435 (Nov. 2, 1994) § 8(4). Because Congress amended the 1987 law to expressly state that the Community is not recognized by the United States as a federally recognized Indian tribe, the Community does not

have the requisite tribal status needed to enjoy sovereign immunity. The Court need not analyze whether the Community is a tribe using the factors set forth in *Native Village of Tyonek v. Puckett*, 957 F.2d 631, 635 (9th Cir. 1992) (citing *Montoya v. United States*, 180 U.S. 261, 266 (1901), and *United States v. Sandoval*, 231 U.S. 28, 46-47 (1913)), because Congress has already determined that the Community is *not* recognized by the United States as an Indian tribe. Therefore, as a necessary party to the suit that may be feasibly joined, the Community can and should be joined pursuant to Rule 19(a).

**f. Nisqually May File an Amended Complaint**

For these reasons, the Court grants Nisqually leave to file an amended complaint naming Chairman Jim Peters as a defendant and joining the Community, a necessary party, as required by Rule 19(a). Defendants will not be prejudiced by allowing Nisqually to amend its complaint; discovery has not yet begun, and the Court will not dismiss this action simply because Nisqually did not correctly name in its original complaint the officials responsible for the alleged illegal activity of Squaxin. The Courts asks that the Community designate a board member from the Community's governing council to accept service of process on behalf of the Community and give Nisqually notice of who will accept service of process.

**III. MOTION FOR PRELIMINARY INJUNCTION**

Nisqually moves for a preliminary injunction to enjoin Squaxin's taxation on sales of cigarettes at the Frank's Landing smoke shop. Nisqually argues that the cigarettes sold at Frank's Landing smoke shop are being sold pursuant to an illegal Addendum to the Squaxin's cigarette compact with the State and that Squaxin's imposition of a tribal tax on sales of cigarettes at its Frank's Landing smoke shop is in violation of federal and state law. Nisqually claims it will suffer irreparable harm if the Squaxin's taxation on sales of cigarettes continues.

The Court finds that Nisqually has not met the burden required for a grant of a preliminary injunction: Nisqually has failed to show a likelihood of success on the merits, and the injury to Nisqually does not outweigh the hardship to the other parties to this suit, particularly Squaxin and the Community.

The purpose of a preliminary injunction is to preserve the status quo and avoid irreparable

injury before adjudication. *See Textile Unltd., Inc. v. A. BMH and Co., Inc.*, 240 F.3d 781, 786, (9th Cir. 2001); *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426 (9th Cir. 1970), *cert. denied*, 404 U.S. 979, 404 U.S. 1042 (1970). The standard for granting a preliminary injunction balances the plaintiff's likelihood of success on the merits against the hardship to the parties. To prevail on a motion for preliminary injunction, a party must demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in the moving party's favor. These alternatives do not represent separate tests but rather represent extremes of a single continuum. The greater the relative hardship to the moving party, the less probability of success must be shown. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

The Court is not satisfied that Nisqually will succeed on the merits. The success of Nisqually's claims turns on whether the Squaxin tribe may legally sell tribal taxed cigarettes on Indian country land held in trust for one of its members – land not located on the Squaxin reservation but instead located within a self-governing dependent Indian community. The sales of cigarettes and the imposition of the tribal sales tax are being made pursuant to Squaxin's agreements with both the State and the Community, and a lease with the beneficiary of land held in trust by the U.S., Theresa Bridges. Thus, the success of Nisqually's claims also turns on whether these agreements are prohibited by federal law.

The Court has thoroughly researched federal common law and federal statutes and regulations and is aware of no federal law that prohibits such an arrangement between the Community, the beneficiary of the trust land, and the Squaxin tribe.

**a. Nisqually has Failed to Show it Will Succeed on the Merits**

**i. Frank's Landing Indian Community is Unique**

As a self-governing dependent Indian community that is not a federally recognized tribe and is not subject to the jurisdiction of any federally recognized tribe, Frank's Landing Indian Community is unique in the realm of Indian sovereignty. Composed of 19 acres of federal Indian allotment land, *see* Senate Report, S. Rep. 100-186 (1987), land held in trust by the government for individual Indians, the territory at Frank's Landing is "Indian country" as defined in 18 U.S.C. §

1151. *See Alaska v. Native Village of Venetie Tribal Gov't* , 522 U.S. 520, 528-29 (1998) (Indian allotments – land held in trust by the federal government for the benefit of individual Indians – are "Indian country."); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 511 (1991); *DeCoteau v. District County Court*, 420 U.S. 425, 427 n. 2 and 446 (1975). As such, the "Indian country" at Frank's Landing is not subject to the jurisdiction of the State of Washington, and is instead subject to the jurisdiction of Indians and the federal government.

The parties do not disagree that the land at Frank's Landing is Indian country under 18 U.S.C. § 1151. The dispute lies in whether the Community itself has jurisdiction over the Indian country at Frank's Landing.

The territorial situation at Frank's Landing is novel in that the Community is not a federally recognized tribe and, thus, does not possess all the sovereign powers of a tribe; the allotments that compose Frank's Landing are held in trust for members of the Community who are also members several different federally recognized tribes; and the Community is recognized by Congress as a "self-governing dependent Indian community." *See* Pub. L. No. 103-435, § 8 (Nov. 2, 1994). Because the Court is presented with this novel situation, the Court must look to Congress and federal law for the answer to whether the Community itself has jurisdiction over this Indian country.

**ii. No Tribe has Jurisdiction over Frank's Landing Territory**

In 1987, Congress "recognized Frank's Landing Indian Community as eligible" for "programs and services" provided by the federal government to Indians. Pub. L. No. 100-153, § 10 (Nov. 5, 1987). Congress amended this law in 1994 and explicitly excluded the Community from the jurisdiction of any federally recognized tribe. Pub. L. No. 103-435, § 8 (Nov. 2, 1994).

The Supreme Court has held that Indian tribes are "invested with the right of self-government and jurisdiction over the persons and property within the limits of the territory they occupy, *except so far* as that jurisdiction has been restrained and abridged by treaty or act of Congress." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982) (emphasis added). "Congress has plenary authority to limit, modify or eliminate the powers of local self-government that tribes otherwise possess." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (citing

*Talton v. Mayes*, 163 U.S. 376, 384 (1896)).

With its 1994 amendment, Congress clearly intended to grant the Community independence from any tribe's jurisdiction, including Nisqually. Thus, even if Nisqually had jurisdiction over the land at Frank's Landing at some point in history,[4] Congress divested all tribes of jurisdiction in 1994 with enactment of Pub. L. No. 103-435. Because no tribe has jurisdiction over the Community, a tribe's right to conduct economic activity and impose a tribal sales tax on trust land at Frank's Landing can only derive from an agreement with the Community.

**iii. Federal Law Does not Prohibit the Agreement between the Community and Squaxin**

Although the Community's sovereignty is limited and does not include the broad range of powers possessed by federally recognized tribes, Congress has vested in the Community's governing bodies the power to contract for the purpose of sustaining the Community's self-government and its school. *See* Pub. L. No. 100-153, § 10 (Nov. 5, 1987). Congress explicitly prohibited the Community from engaging in Class III gaming, *see* Pub. L. No. 103-435, § 8(4), but it has not prohibited the Community from contracting with a member's tribe to allow the tribe to sell tribal taxed cigarettes on land within the dependent Indian community in exchange for a percentage of the tribal tax revenue.

The Court will not interfere with the Community's ability to contract with a sovereign tribe absent such a prohibition by Congress or case law. Congress clearly intended with the enactment of Pub. L. No. 103-435 for the Community to be given limited sovereign powers, as a dependent Indian community, in order to sustain its governmental programs, and this includes the power to contract with other tribes. This is consistent with the federal government's policy of promoting Indian self-reliance and government. *See, e.g.,* Indian Gaming Regulation Act, 25 U.S.C. § 2701(4) ("[A] principal goal of Federal Indian policy is to promote tribal economic development, tribal self-

[4] Although Nisqually's Constitution, Article I, describes its territory as including "tracts placed in trust or restricted status individual Indians or for the Tribe located in the Nisqually River basin," this territorial component of the tribe's Constitution was last amended on October 28, 1994. Congress enacted Pub. L. No. 103-435 on November 2, 1994 – 5 days *after* Nisqually's Constitution was amended. Because a tribe's jurisdiction only exists to the extent it has not been restricted by an act of Congress, Nisqually's jurisdiction over Indian trust lands at Frank's Landing was expressly divested by an act of Congress through the enactment of Pub. L. No. 103-435.

sufficiency, and strong tribal government."). Therefore, after analysis of legislative history and case law, the Court cannot say as a matter of law that the Community is prohibited from making an agreement with a tribe to allow the tribe to conduct economic activity and to impose tax on sales occurring on Frank's Landing trust land if the beneficiary of the trust land is in agreement.

**iv. Federal Law Does not Prohibit the Lease Between Theresa Bridges and Squaxin or Squaxin's Exercise of Taxing Authority on the Leased Land**

Congress has also not prohibited the beneficiaries of the trust land within the Community from making lease agreements with their respective tribes to conduct economic activity, within the limits of federal law, on the land. If a member of the Community wishes to allow her tribe to conduct economic activities on her trust land in Indian country, the Court cannot interfere with her use and enjoyment of the land. Again, because Theresa Bridges's trust land is Indian country, only Congress can restrict the use of this land.

Furthermore, absent explicit divestiture by Congress, the Court cannot interfere with the Squaxin's sovereign power to conduct economic activity on the tribal member's trust land and charge a corresponding sales tax. The Supreme Court has recognized that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory." *United States v. Mazurie*, 419 U.S. 544, 557 (1975). Only Congress has the power to divest a sovereign tribe of its broad power to tax non-members participating in economic activity in Indian country. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982).

Absent explicit prohibition by Congress, Frank's Landing Indian Community and its member Theresa Bridges, a beneficiary of Indian trust land and a Squaxin tribal member, are permitted to contract with Squaxin and allow the tribe to sell tribal taxed cigarettes on this land.
Thus, because the Squaxin's action are not prohibited by federal law, Nisqually is not likely to succeed on the merits.

**b. Significant Hardship to the Defendants Requires Denial of Preliminary Injunction**

The significant hardship that the defendants face if injunctive relief was granted also weighs

in favor of denying the request for preliminary injunction. A grant of a preliminary injunction would impose hardship on Squaxin and the Community, both of which derive revenue on sales made at the Frank's Landing smoke shop; the tax collected on sales of cigarettes at this smoke shop funds important Squaxin and Community governmental programs including the Wa He Lut school at Frank's Landing. *See Declaration of Jim Peters* [Dkt. # 23]. Because the Community's only source of revenue for the school are federal grants and the agreement with Squaxin, a preliminary injunction would significantly hinder the operation of the Wa He Lut school and the education of many local Indian children.

The Court acknowledges that Nisqually faces injury in the form of a reduction in tobacco sales at Nisqually's own smoke shop if the Frank's Landing smoke shop is permitted to continue sales. *See* Exhibit 5 of *Plaintiff's Motion for Preliminary Injunction, Declaration of Matthew Oshiro* [Dkt. # 2]. However, this outcome is a hardship that Congress must have considered when it recognized the Frank's Landing Indian Community as a self-governing dependent Indian community that had contracting powers and when it expressly divested all federally recognized tribes of jurisdiction over the Community. As such, the Court will defer to the intentions of Congress and its enactment of Pub. L. No. 103-435. A balance of the hardships and the unlikelihood of plaintiff's success tips heavily in favor of the defendants, and, thus, the request for the preliminary injunction is denied.

## III. CONCLUSION

Nisqually's requested relief depends on the resolution of a substantial question of federal law. The dispute regarding Squaxin's jurisdiction to impose tribal cigarette sales tax on sales made on Theresa Bridge's trust land is a substantial question of federal law that must be resolved before granting the Nisqually's relief. Thus, federal question jurisdiction exists in this matter. Supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) exists over the two state law claims; the federal and state law claims derive from a "common nucleus of facts," and, thus, form the same case or controversy. Although Squaxin is an indispensable party and immune from suit, Chairman Jim Peters can be joined pursuant to the *Ex Parte Young* doctrine to cure this indispensability. Furthermore, the Community is a necessary party to the suit, and, as such, must be joined pursuant

to Rule 19(a). The Community does not have tribal status as Congress explicitly stated in Pub. L. No. 103-435 and, therefore, does not enjoy tribal sovereign immunity.

Finally, the motion for preliminary injunction is denied. Nisqually has failed to show a likelihood of success on the merits, and the significant hardship to the defendants, particularly Squaxin and the Community, if the injunctive relief were granted weighs in favor of denying the request for a preliminary injunction.

## IV. ORDER

For these reasons, the Court **DENIES** Defendants' and intervening Defendants' motions to dismiss for failure to join Squaxin, an indispensable party [Dkt. # 20, # 31, # 36 & # 57]; **DENIES** Nisqually's motion for preliminary injunction [Dkt. # 2]; **GRANTS** Defendants Whitener, Johnson and Lopeman's motion to dismiss the action as against them [Dkt. # 20]; and **GRANTS** Nisqually's motion to amend complaint [Dkt. # 46] and **ORDERS** Nisqually to join Frank's Landing Indian Community, a necessary party to the suit.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE