HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NISQUALLY INDIAN TRIBE,

        Plaintiff,

        v.

CHRISTINE GREGOIRE, et al,

        Defendants.

Case No. C08-5069RBL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

THIS MATTER comes before the Court on cross-motions for summary judgment. Plaintiff, Nisqually Indian Tribe, has filed a motion for partial summary judgment [Dkt. #128]. Each of the defendants has filed a separate motion for summary judgment on all claims as follows: Defendant Christine Gregoire [Dkt. #125], Defendant Lopeman [Dkt. #130], Defendants Frank's Landing Indian Community and Theresa Bridges [Dkt. #132]. The Court has reviewed all documents submitted for and against said motions. The Court has previously heard oral argument in connection with plaintiff's earlier motion for preliminary injunction [Dkt. #2]. Said motion was DENIED by the Court [Dkt. #90]. Further argument is not necessary for the Court to resolve the issues presented by the various motions. For the reasons stated below, plaintiff's motion for partial summary judgment [Dkt. #128] is **DENIED**. The defendants' motions for summary judgment [Dkt. #s 125, 130 and 132] are **GRANTED**. Plaintiff's lawsuit is **DISMISSED WITH PREJUDICE**.

# BACKGROUND

Since this case was first presented to the Court in the form of a motion for preliminary injunction, the factual landscape has changed very little. The salient, uncontroverted facts are as follows:

1. Plaintiff, Nisqually Indian Tribe, is a federally recognized Indian Tribe which occupies reservation lands within the Nisqually River Basin in Washington.

2. Frank's Landing consists of three parcels of land that are held in trust by the United States for the benefit of Individual Indians and located within the Nisqually River Basin, outside the Nisqually Tribal Reservation. These parcels are known as allotments. The government gave these allotments to Individual Indians in 1918 when part of the land constituting the Nisqually Reservation was taken to create the Fort Lewis Military Reservation.

3. In 1987, Congress enacted Pub. L. No. 100-153, § 10 (Nov. 5, 1987), to recognize that the members of Frank's Landing Indian Community are eligible for certain programs and services provided to Indians by the United States government and that the Community is "recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act (ISDEAA)."

4. Congress amended this law in 1994 at the behest of Frank's Landing Indian Community, whose members feared unilateral annexation into the Nisqually Tribal Reservation if a constitution under consideration by the Nisqually Tribe was adopted. The 1994 legislation made clear that Frank's Landing Indian Community is a "self-governing dependent Indian Community that is not subject to the jurisdiction of any federally recognized tribe." *See* Pub. L. No. 103-435, § 8 (Nov. 2, 1994). The Community was prohibited from conducting Class III gaming on the allotted lands and the Congress expressly reiterated that the law does not "constitute the recognition by the United States that Frank's Landing Indian Community is a federally recognized tribe." *Id*.

5. The Squaxin Island Tribe is a federally recognized Indian tribe, organized under the Indian Reorganization Act of 1934. Theresa Bridges, one of the owners of allotted land within Frank's Landing Indian Community is a member of the Squaxin tribe. The Nisqually, the Squaxin and many of the members of Frank's Landing Indian Community are descendants of the several tribes of the Treaty of Medicine Creek.

6. In 2001, the Washington legislature authorized the Governor to enter into cigarette tax contracts (compacts) with certain specified Tribes, under which the Tribe could collect its own Tribal cigarette tax in lieu of the State's cigarette tax, and state and local sales and use taxes. WASH. CODE ANN. §§ 43.06.450-.460 (West 2009). The cigarette compacts must:

   a. Apply only to retail sales in which Indian retailers (not non-Indian retailers) make delivery and physical transfer of possession of the cigarettes from the seller to the buyer within Indian Country;

   b. Provide for a Tribal cigarette tax in lieu of all state cigarette taxes and state and local sales and use taxes on sales of cigarettes in Indian Country by Indian retailers;

   c. Provide that all cigarettes possessed or sold by a retailer bear a cigarette stamp obtained by wholesalers from a bank or other suitable stamp vendor, and that procedures be used by the Tribe to assure that the Tribal tax is paid by the wholesaler obtaining such cigarettes; and

   d. Provide that tax revenue retained by the Tribe must be used for essential government services.

7. Both the Squaxin Island Tribe and the Nisqually Indian Tribe have entered into such compacts with the State of Washington.

8. Frank's Landing and the Squaxin Island Tribe entered into an Intergovernmental Agreement in which Frank's Landing consented to the Squaxin Tribe's assertion of taxing authority over a Squaxin-owned business located at Frank's Landing.

9. Allottee Theresa Bridges and Frank's Landing entered into a federally-approved lease, and Frank's Landing and Squaxin entered into a federally-approved sublease, which allowed a Squaxin-owned enterprise to operate on allotted land owned by Theresa Bridges, a Squaxin.

10. The Squaxin Island Tribe and the State of Washington entered into an Addendum to the Squaxin Compact to clarify that the Compact's geographic scope included allotted lands when under an agreement between Squaxin and a self-governing dependent Indian Community allowing the Tribe to operate as a "tribal retailer" as that term is used in the Compact.

11. The allotted land from which the Smoke Shop is operated is Indian Country.

12. Squaxin tax revenues derived from compact-regulated cigarettes are dedicated to "essential governmental services," namely support of the Wa He Lut School for Indian children.

## NISQUALLY'S AMENDED COMPLAINT

In its First Amended Complaint [Dkt. #92], the Nisqually Tribe challenges the arrangement between Frank's Landing, the Squaxin and the State of Washington on four grounds:

1. The Squaxin has no legal authority to tax transactions with non-Squaxin members occurring on lands over which the Squaxin has no governmental authority or jurisdiction;
2. The lease between Squaxin and Bridges was not approved by the Secretary of the Interior and therefore it is not valid;
3. The Addendum between the State of Washington and Squaxin authorizing the State to retrocede State taxes on sales of cigarettes at Frank's Landing in favor of Squaxin tribal taxes, violates the State law authorizing such compacts because the Squaxin cannot exercise jurisdiction and sovereign authority over Frank's Landing; and
4. The Addendum between the State and the Squaxin constitutes a violation of the State's compact with the Nisqually.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

# DISCUSSION

**I. The Entry into the Intergovernmental Agreement by Frank's Landing, and the Assertion of Taxing Authority by the Squaxin Island Tribe at Frank's Landing Do Not Violate Federal Law.**

**A. Congress Has Not Declared the Frank's Landing Indian Community to Be a "Tribal-free" Zone.**

The issue of federal law in dispute in this case is the extent to which any tribe can exercise taxing authority over cigarettes sold to non-Indians at the Frank's Landing Indian Community. The Nisqually Tribe interprets the language of the 1994 legislation to foreclose the current arrangement between the Squaxin, Frank's Landing and the State. The Tribe argues that Frank's Landing Indian Community is not a federally recognized Tribe and has no sovereign power to tax; that Frank's Landing is not subject to the jurisdiction of any federally recognized tribe; and that Frank's Landing Indian Community is not a legal entity that can enter into contracts except with the federal government and then only to receive ISDEAA monies. The defendants argue that the Nisqually ignore the 1994 recognition that the Frank's Landing Indian Community is "self-governing." Consistent with that express Congressional grant of authority, though not a Tribe, the Community has authority to enter into contracts with other governments and Tribes in order to promote its own economic development.

Both the Nisqually Tribe and the Squaxin Island Tribe assert in their respective cigarette compacts with the state, the authority to tax cigarettes sold in "Indian Country." All parties acknowledge that the Frank's Landing Indian Community is "Indian Country" as defined at 18 U.S.C. § 1151. The Nisqually Tribe concedes that the Squaxin Island Tribe, as a federally-recognized Indian Tribe, has the sovereign power to tax transactions occurring on trust lands unless divested of it by federal law. *See Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980). The Nisqually Tribe argues, however, that for a Tribe to exercise taxing authority over non-members the Tribe must have jurisdiction to exercise that authority, which authority must not have been limited or abrogated by Congress. It argues that in 1994, Congress expressly abrogated the power of any Tribe to exercise jurisdiction over Frank's Landing and, moreover, that Frank's Landing Indian Community is powerless to transfer, by contract, jurisdiction at Frank's Landing to the Squaxin.

The relevant language of the 1994 Frank's Landing legislation reads as follows:

**RECOGNITION OF INDIAN COMMUNITY**

> (a) Subject to subsection (b), the Frank's Landing Indian Community in the State of Washington is hereby recognized;
>
> (1) as eligible for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services, but the proviso in section 4(c) of such Act (25 U.S.C. 450b(c)) shall not apply with respect to grants awarded to, and contracts entered into with, such Community; and
>
> (2) as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe.
>
> (b) (1) Nothing in this section may be construed to alter or affect the jurisdiction of the State of Washington under section 1162 of title 18, United States Code.
>
> (2) Nothing in this section may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe.

In considering statutory rights and duties, "the language of the statute controls when sufficiently clear in its context." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201 (1985). Interpreting the 1994 amendment must begin with its plain language. *See e.g., Tahara v. Matson Terminals, Inc.,* 511 F.3d 950, 953 (9th Cir. 2007). Moreover, the Court must give effect to all of the words that Congress uses. *See e.g., Bowsher v. Merck & Co.,* 460 U.S. 824, 833.

In making its federal law argument against the arrangement between Frank's Landing, Squaxin and the State of Washington, the Nisqually Tribe reads too broadly the 1994 legislation declaring that Frank's Landing Indian Community "is not subject to the jurisdiction of any federally recognized tribe." It suggests that this language, taken in isolation, creates some kind of "tribal-free" zone that prevents any tribe, or Indian Community, from exercising jurisdiction or government authority over this part of "Indian Country." The argument ignores Congress' designation of Frank's Landing Indian Community as "self-governing" and its own well-documented assertion that the Nisqually Tribe has the legal ability, indeed the exclusive right, to sell its own cigarettes and to collect its own tax at Frank's Landing.[1] *See infra* §IV.

---

[1] According to the Frank's Landing Indian Community, the Nisqually contacted them about operating a Smoke Shop at Frank's Landing selling Tribal taxed cigarettes under the Nisqually compact. Adams Decl. at p. 2, para. 7 [Dkt. #130]. The Nisqually do not challenge that claim.

Both the Nisqually and Squaxin Island Tribes have the sovereign power to enter into the respective cigarette tax compacts and to exercise taxing authority over cigarette sales conducted on trust lands, also known as Indian Country. The referenced language in the 1994 legislation is little more than a declaration of independence by which the Congress declared that no Tribe could impose its authority over the Frank's Landing Indian Community without the consent of those who would be governed. Because no federally-recognized Tribe has jurisdiction over the Community, one Tribe's right to conduct economic activity and to impose sales tax on trust land at Frank's Landing can only derive from an agreement with the Community, a self-governing, legally recognized entity.

### B. Congress Has Not Stripped Frank's Landing Indian Community of the Capacity to Enter Into Contractual Arrangements In Order to Promote Economic Development.

Based upon its reading of the 1994 Frank's Landing legislation, the Nisqually Tribe argues that Frank's Landing Indian Community is not a legally-recognized entity that possesses the power to enter into contracts: it is not a Tribe, it is not a corporation, it is not even a "community" as that term is commonly understood. The Tribe therefore asserts that the intergovernmental agreement with Squaxin Island and the lease agreement(s) signed by Frank's Landing Indian Community are invalid. Again, the Nisqually's reading of the legislation is wrong. The relevant language from the 1994 legislation reads: ". . . the Frank's Landing Indian Community . . . is hereby recognized . . . (2) as a self-governing dependent Indian Community that is not subject to the jurisdiction of any federally-recognized tribe." In other provisions of the Act, Frank's Landing is declared eligible to contract for ISDEAA programs and services; eligible to receive ISDEAA grants; subject to Washington State's criminal jurisdiction; and ineligible to conduct Class III gaming. Nothing in the language of the legislation prohibits the kind of arrangement structured by the various defendants here.

If a statute is clear on its face, canons of construction do not come into play. *See e.g., South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 506 (1986). Here, the Nisqually Indian Tribe asks the Court, based on the language of the 1994 legislation, to conclude that Frank's Landing Indian Community, is a self-governing dependent community that has had all indicia of self-governance stripped from it by Congress except for the solitary, salutary right to receive hand-outs from the federal

government. The Nisqually ignore what it means to be self-governing.[2] A federally-recognized, self-governing entity can enter into contracts. *See Okeson v. City of Seattle*, 159 Wn.2d 436, 445 (2007) (local governmental powers are limited to those powers granted in express words, or to those necessarily or fairly implied in or incident to the powers expressly granted, and also to those essential to the declared objects and purposes of the corporation). A necessary and inherent power of a self-governing entity is the power to contract with those individuals or entities with whom the self-governing entity finds it necessary to contract, in order to fulfill its obligations to govern and to administer programs for the benefit of the governed.[3]

Courts require a clear expression of Congressional intent to find that tribal authority has been abrogated. *See e.g.*, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 (1978). The 1994 legislation does contain certain specified restrictions on the governmental powers or authority to be exercised by Frank's Landing Indian Community: a) it is not a tribe and therefore presumably lacks some powers of a sovereign; b) it is subject to Washington criminal laws, and c) it cannot conduct Class III gaming. If the purpose of the Act was to limit the power to contract to those contracts with the federal government under the ISDEAA, the anti-gaming provision would not have been necessary. It is inconceivable that Class III gaming could be conducted on community lands without the execution of a single contract necessary to build a facility, install necessary gaming equipment, employ personnel or provide other basic services such as food, beverage or sanitary facilities. As a self-governing community, Frank's Landing Indian Community has the inherent right to enter into contracts.

### i. Federal Law Does Not Prohibit the Agreement Between the Community and Squaxin.

Although the Community's sovereignty is limited and does not include the broad range of powers possessed by federally recognized tribes, Congress has vested in the Community's governing bodies the power to contract for the purpose of sustaining the Community's self-government and its school. *See*

---

[2] The plain meaning of these words is intended to define an entity as "[h]aving control over . . . itself." Webster's Third New International Dictionary (1976); *see also* Black's Law Dictionary (1990) (defining a "governing body" as one that has "ultimate power to determine its policies and control its activities").

[3] Because the language of the 1994 legislation is clear on its face, the Court declines to consider the modest evidence of Congressional intent gleaned from the colloquy between Representatives Thomas and Richardson. Similarly, the Court is not persuaded by the Nisqually's offering of so-called Agency interpretation of said legislation.

Pub. L. No. 100-153, § 10 (Nov. 5, 1987). As previously stated, Congress explicitly prohibited the Community from engaging in Class III gaming, *see* Pub. L. No. 103-435, § 8(4), but it has not prohibited the Community from contracting with a member's tribe to allow the tribe to sell tribal taxed cigarettes on land within the dependent Indian Community in exchange for a percentage of the tribal tax revenue.

The Court will not interfere with the Community's ability to contract with a sovereign tribe absent such a prohibition by Congress or case law. Congress clearly intended with the enactment of Pub. L. No. 103-435 for the Community to be given limited sovereign powers, as a dependent Indian Community, in order to sustain its governmental programs, and this includes the power to contract with other tribes. This holding is consistent with the federal government's policy of promoting Indian self-reliance and government. *See, e.g.,* Indian Gaming Regulation Act, 25 U.S.C. § 2701(4) ("[A] principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government.").[4]

### ii. Federal Law Does Not Prohibit the Lease Between Theresa Bridges and Squaxin or Squaxin's Exercise of Taxing Authority on the Leased Land.

Congress has also not prohibited the beneficiaries of the trust land within the Community from making lease agreements with their respective tribes to conduct economic activity, within the limits of federal law, on the land. If a member of the Community wishes to allow her tribe to conduct economic activities on her trust land in Indian Country, the Court cannot interfere with her use and enjoyment of the land. Again, because Theresa Bridges' trust land is Indian Country, only Congress can restrict the use of this land.

Furthermore, absent explicit divestiture by Congress, the Court cannot interfere with the Squaxin's sovereign power to conduct economic activity on the tribal member's trust land and charge a corresponding sales tax. The Supreme Court has recognized that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory." *United States v. Mazurie*, 419 U.S. 544, 557 (1975). Only Congress has the power to divest a sovereign tribe of its broad power to tax non-members participating in economic activity in Indian Country. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982).

---

[4] Although the Frank's Landing Indian Community is prohibited from conducting Class III gaming, the broad expression of Federal Indian policy contained within the Indian Gaming Regulation Act is still a useful source of guidance in this case.

Absent explicit prohibition by Congress, Frank's Landing Indian Community and its member Theresa Bridges, a beneficiary of Indian trust land and a Squaxin tribal member, are permitted to contract with Squaxin and allow the tribe to sell tribal taxed cigarettes on this land.

**II. The Secretary of the Interior Did Approve the Lease Arrangement Between Theresa Bridges, Frank's Landing and the Squaxin.**

According to documents supplied to the Court, the Department of the Interior, pursuant to 25 U.S.C. § 415, has approved both a commercial ground lease between Theresa Bridges and Frank's Landing Indian Community and a sublease between Frank's Landing Indian Community and the Squaxin. The Nisqually Tribe acknowledges that Interior has approved the lease and sublease, but argues such approval does not validate what otherwise constitutes a violation of federal law. While the Nisqually Tribe's point may be well-taken, the fact remains that failure to obtain Interior's approval of the lease has been eliminated as an independent basis for abrogating the arrangement, which is the subject of this dispute.

**III. The Addendum Between the State of Washington and the Squaxin Island Tribe Does Not Violate State Law.**

The State of Washington imposes an excise tax on cigarettes sold, used, consumed, handled, possessed or distributed within its borders. WASH. CODE. ANN. §§ 82.24.020, .027(1), and .028. The State collects the tax through the sale of cigarette stamps, which must be affixed to all packages of cigarettes possessed within the State that have not been pre-approved for tax exemption. *Id.* at § 82.24.030.

Persons exempt from the requirement to prepay the cigarette tax or to affix stamps to cigarettes include:

> (b) A federal instrumentality with respect to sales to authorized military personnel; or
>
> (c) An Indian tribal organization with respect to sales to enrolled members of the Tribe.
>
> WASH. CODE. ANN. § 82.24.260(1).

The tribal exemption does not extend to sales to non-Indians or to Indians who are not members of the Tribe. WASH. CODE. ANN. 458-20-192(5); *Bercier v. Kiga*, 127 Wn. App. 809, 818 (2004).

An additional exception to the tax requirements, is for cigarettes subject to transactions covered by cigarette tax contracts (typically referred to as compacts) between the State and specified Indian Tribes.

WASH. CODE. ANN. §§ 43.06.450-.460. The Governor is authorized to enter into cigarette tax contracts with certain specified Tribes, under which the Tribe could collect its own Tribal cigarette tax in lieu of the State's cigarette tax. *Id.* The intent in authorizing the Governor to enter into the tax contracts included furthering the government-to-government relationships between the State and the Indian Tribes, promoting Tribal economic development and providing needed revenues for Tribal governments, enhancing enforcement of the State's cigarette tax laws, and reducing conflict between the State and Tribes. *Id.* at § 43.06.450.

A cigarette tax contract meets the requirements of state law if it pertains only to sales by Indian retailers taking place within Indian Country, imposes a Tribal tax, equal to 100% of the relevant State taxes, and is collected and used for essential government services. It is undisputed that the Squaxin Tribe is authorized to enter into a cigarette tax contract with the Governor. WASH. CODE. ANN. § 43.06.460. It is also undisputed that the Squaxin-owned entity operating the Smoke Shop at Frank's Landing is an "Indian retailer" as defined by RCW § 43.06.455(2), (14)(b). Finally, the parties agree that the enterprise is located within "Indian Country" as defined at 18 U.S.C. § 1151(b) and (c) ("Indian Country" means "all dependent Indian Communities within the borders of the United States whether within the originally or subsequently acquired territory thereof, and whether within or without the limits of a state" and "all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same").

The Nisqually Tribe argues that the Squaxin compact cannot apply to Ms. Bridges' allotment at Frank's Landing because the allotment is outside the Squaxin Reservation but nothing in State law prohibits the Squaxin Tribe from collecting tribal taxes from sales made by a tribal enterprise from land located within Frank's Landing Indian Community. All the requirements of state law pertaining to cigarette tax compacts with designated Indian tribes have been met. No state law prohibits the specific arrangement which is the subject of this dispute.

**IV.    The Addendum to the Squaxin Compact Does Not Violate the Nisqually Compact.**

The Nisqually Tribe cites the Court to the definition of "Indian Country" within its own compact with the State of Washington and asserts an exclusive sales territory for Nisqually retailers to sell

cigarettes within the Nisqually Basins.[5] This argument is made by the Nisqually in the face of evidence that during negotiations over the Compact, the Nisqually requested a 20-mile exclusive selling area, to include Frank's Landing. The State expressly rejected that request. The follow-up argument that Nisqually impliedly received assurances from a state official, that "no compact would be executed that would allow cigarette sales at Frank's Landing," P. Summary Judgment Motion [Dkt. #128 at p.5] is also misplaced. The actual language of assurance from Leslie Cushman, Department of Revenue Chief Deputy, was "We will only negotiate a cigarette compact with federally recognized tribes which is a requirement of the enacting legislation." Leslie Cushman Dep., p. 53, Exh. D to Comfort Declaration [Dkt. #126]. In its reply memorandum, the Nisqually Tribe does not refute the testimony of Ms. Cushman on this subject. The Tribe's own reference to the Cushman letter confirms Cushman's testimony. The implication advocated by Nisqually cannot reasonably be extracted from the clear language of the letter and is hereby rejected. In any event, the so-called "assurance" would not have supported a claim that the State was somehow estopped to enter into the Addendum to the Squaxin Island Tribes' cigarette compact.

Finally, the definition of "Indian Country" contained within the Nisqually Compact to include "all lands placed in trust or restricted status for individual Indians or for the Tribe located in the Nisqually River Basin" is limited by the qualifier "except as otherwise provided by law." The 1994 Frank's Landing legislation triggers that qualifying language and exempts Frank's Landing from the non-consensual jurisdiction of the Nisqually Tribe.

## **CONCLUSION**

The Nisqually claim that if the Court approves the Addendum to the Squaxin Island Compact, then the Squaxin will claim authority to open cigarette sales outlets anywhere in the State of Washington where it can find an Indian who lives on allotted land who can be persuaded to enroll in the Squaxin Tribe. Such an outcome, presumably requiring assent of the State in the form of additional Addenda to the Squaxin Compact, may reflect poor public policy, or poor Indian policy, but the holding in this case will not bring that prediction to pass. The Frank's Landing Indian Community is unique. The legislation recognizing its status is not applicable to "other" allotted lands. Though it is not a Tribe and its lands are not subject to

---

[5] The Nisqually Tribe claims that it, not the Squaxin, is the only Tribe that can exert taxing authority over the trust lands located within the Nisqually River Basin.

the jurisdiction of any federally-recognized tribes, it is a self-governing dependent Indian community with limited control over its own affairs. The Court does not in this decision opine on the outer limits of the Community's powers. The Community clearly has the power to enter into contracts generally and, specifically, to enter into the contracts which are at the heart of this dispute. The Community is not precluded by federal or state law from consenting to the sale of tribal cigarettes by an Indian Retailer who collects and shares tax revenues on the sale of those cigarettes. Accordingly, plaintiff's motion for partial summary judgment [Dkt. #128] is **DENIED** and Defendants' Motions for Summary Judgment [Dkt. #s 125, 130 and 132] are **GRANTED.** This lawsuit is **DISMISSED WITH PREJUDICE**.

Dated this 8th day of July, 2009.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE